UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                :

DIGNA LARA,                                  :
                                :

                Plaintiff,         :
                                :           20 Civ. 10383 (JPC)

        -v-                   :
                                :     <u>MEMORANDUM OPINION</u>

PORT AUTHORITY OF NEW YORK AND NEW    :        <u>AND ORDER</u>
JERSEY and JETBLUE AIRWAYS CORPORATION,  :
                                :

               Defendants.      :
                                :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Digna Lara brings this action against Defendants JetBlue Airways Corporation ("JetBlue") and the Port Authority of New York and New Jersey (the "Port Authority") for injuries she allegedly suffered on November 6, 2019, when she fell while disembarking a JetBlue plane at John F. Kennedy International Airport ("JFK Airport"). Defendants have moved for summary judgment. Because there is a genuine dispute of material fact as to whether Lara suffered an "accident" within the meaning of the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. 13038, 2242 U.N.T.S. 309 ("Montreal Convention"), Defendants' motion is denied with respect to JetBlue. The undisputed evidence does establish, however, that the Port Authority was a landlord out-of-possession and thus cannot be liable for Lara's injuries. Summary judgment is therefore granted in favor of the Port Authority.

## I. Background[1]

      The facts of this case as presented by the parties are straightforward. On the morning of November 6, 2019, Lara arrived at JFK Airport on a flight that had originated in the Dominican

---

[1] These facts are drawn from Defendants' five-paragraph statement of material facts under Local Civil Rule 56.1, Dkt. 31 ("Defts. 56.1 Stmt."). While Lara has filed a purported response to

Republic.  Defts. 56.1 Stmt. ¶ 1.  Upon landing, Lara waited twenty minutes before disembarking

the plane, allowing a "number of people" to exit before her.  *Id.* ¶ 2 (quoting Dkt. 32-1 ("Lara Dep.

Tr.") at 58:21).  Lara alleges that, as she was disembarking, she tripped on an excessively high

step on the jet bridge, causing her to sustain injuries.  *Id.* ¶ 3.  Maintenance records prior to and

subsequent to Lara's fall do not reflect any defects or problems with the jet bridge or its operation.

*Id.* ¶ 4.

The Port Authority leases Terminal Five at JFK Airport, the terminal where Lara arrived

on November 6, 2019, to JetBlue.  *Id.* ¶ 5.[2]  Under the terms of their lease, JetBlue is responsible

for the terminal's repair and maintenance.  *Id.*

Lara initiated this action on November 6, 2020 in Bronx County Supreme Court.  Dkt. 1-1

at 5.  Defendants removed the case to federal court in this District on December 9, 2020.  Dkt. 1.

Defendants answered the Complaint on December 17, 2020, Dkts. 5, 6, and following discovery

moved for summary judgment on June 8, 2022, Dkts. 26-31.  Lara opposed summary judgment on

July 7, 2022.  Dkt. 32.  Defendants filed their reply on July 27, 2022.  Dkt. 33.

---

Defendants' Rule 56.1 statement, *see* Dkt. 32-5 ("Pl. Counter 56.1 Stmt."), that document does not
comply with the Local Rule because it fails to cite any admissible evidence.  *See* Loc. Civ. R.
56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including
each statement controverting any statement of material fact, must be followed by citation to
evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Thus, unless
Defendants have admitted the facts in question, the Court will not consider any facts raised only
in Lara's Rule 56.1 statement, and the Court will deem the facts in Defendants' Rule 56.1 statement
admitted so long as they are supported by the record.  *See Marino v. Schult*, 764 F. App'x 73, 74
(2d Cir. 2019) ("If a non-moving party fails to comply with local rules governing summary
judgment, a district court may rely on a moving party's statement of undisputed facts as long as
those facts are supported by the record." (citation omitted)).

[2] Lara alleges in the Complaint that her fall occurred at Gate B28 in Terminal Five.  Dkt.
1-1 ¶¶ 10, 18.

## II.  Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.  "If the moving party meets its initial burden, the nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial' using affidavits or other evidence in the record, and cannot rely on the 'mere allegations or denials' contained in the pleadings."  *Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *6 (S.D.N.Y. Mar. 11, 2022) (quoting *Anderson*, 477 U.S. at 248); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("[A] nonmoving part[y] . . . may not rely on conclusory allegations or unsubstantiated speculation . . . [and] must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks omitted)).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought."  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

At the same time, however, "in considering what may reasonably be inferred from witness testimony, the court should not accord the nonmoving party the benefit of unreasonable inferences, or inferences at war with undisputed facts." *Taylor*, 2022 WL 744037, at *7 (internal quotation marks omitted).

### III.  Discussion

#### A.  Evidentiary Disputes

As indicated *supra* at footnote 1, Defendants submitted a brief Local Civil Rule 56.1 statement in support of their motion.  *See* Defts. 56.1 Stmt.  In response, Lara submitted an affirmation which does not cite to admissible evidence disputing Defendants' citations to the factual record as required by Local Civil Rule 56.1(d).  *See* Pl. Counter 56.1 Stmt.  The Court therefore treats each fact presented by Defendants as admitted as long as the fact finds support in the record evidence.  *See Marino,* 764 F. App'x at 74.  Lara nonetheless argues, both in her briefing opposing summary judgment and (improperly) in her Rule 56.1 counter-statement, that two factual recitations provided by Defendants are based on improperly authenticated evidence.  Dkt. 32-4 ("Opposition") at 10, 18-19; Pl. Counter 56.1 Stmt. ¶¶ 4-5; *see Alliance Sec. Prods., Inc. v. Fleming Co.*, 471 F. Supp. 2d 452, 454 (S.D.N.Y. 2007) ("[L]egal arguments . . . belong in briefs, not Rule 56.1 statements, and so are disregarded in determining whether there are genuine issues of material fact.").

First, Lara claims that maintenance records for the jet bridge, cited in support of paragraph four of Defendants' Rule 56.1 statement, "are not properly authenticated and even if considered, do not address height or maintenance inspections or records with respect to jet bridge #26."  Pl. Counter 56.1 Stmt. ¶ 4.  These records are attached as Exhibit A to an affidavit from Thomas Giles, the Vice President of Operations at Oxford Airport Technical Services.  Dkt. 28 ("Giles Affidavit").  In her opposition brief, Lara argues that Defendants "fail[] to establish proper authentication of any

of the records relied upon by the Defendants." Opposition at 9. Lara continues, without citation, that

> Mr. Giles' affidavit is insufficient to establish the admissibility of these purported records, as Mr. Giles fails to establish that the records and all attachments thereto have been reproduced in his presence or at his direction. Moreover, Mr. Giles likewise fails to establish the manner in which the records are stored (paper or electronically) and who, if anyone maintains the ability to amend, delete or otherwise alter these documents.

Opposition at 10.

Second, Lara contends in her counter-Rule 56.1 statement that a lease between the Port Authority and JetBlue also is "not properly authenticated" and "do[es] not address rights of re-entry or course of conduct as between the parties as to this purported lease." Pl. Counter 56.1 Stmt. ¶ 5. In her opposition brief, she cites a series of apparent state law evidentiary principles, which are inapplicable in this federal case. Opposition at 18-19; *see* Fed. R. Evid. 101(a) ("These rules apply to proceedings in United States courts.").

Under Federal Rule of Evidence 901(a), a document may be authenticated by "evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901 provides a non-exhaustive list of examples of evidence that can properly authenticate other evidence in federal court, including testimony from a witness with knowledge who attests "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). "Generally, a document is properly authenticated if a reasonable juror could find in favor of authenticity." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). "The bar for authentication of evidence is not particularly high." *Id.*

First, Giles's affidavit adequately authenticates the maintenance records for the jet bridge where Lara allegedly fell, both prior to and after that incident. *See* Giles Affidavit. Giles avers that he is "employed as a Vice President of Operations by Oxford Airport Technical Services (Oxford) at JFK Airport, Jamaica, Queens," a position that he has held "for 15 years." *Id.* at ¶ 1. Giles

further states that his affidavit is "made upon personal knowledge," *id.* ¶ 2, and that attached to the affidavit are "true and complete maintenance records for Jetbridge No. 26 at JFK Airport Terminal Five" for October 4, 2019, November 18, 2019, and December 13, 2019, *id.* ¶ 3. The Court determines that Giles has sufficiently authenticated the maintenance records that are attached to his affidavit.[3]

Second, the lease between the Port Authority and JetBlue is authenticated by the affirmation of Brian K. Friedman. *See* Dkt. 29 ("Friedman Affirmation"); Friedman Affirmation, Exh. A ("Lease"). In that affirmation, which is affirmed under penalty of perjury, Friedman states that he is the "Director of Litigation and Regulatory matters for defendant JetBlue Airways Corporation" and that he is "familiar with JetBlue's contracts and leases, including those in effect on November 6, 2019." *Id.* ¶ 1. Friedman attaches to his affirmation as Exhibit A an "accurate and complete cop[y] of Sections 10-13 of the Lease Agreement" as that provision was "in full force and effect on November 6, 2019." *Id.* ¶ 2; *see* Lease. Friedman further avers that "[t]hese sections set forth JetBlue's responsibilities for maintenance and repair at Terminal Five, the JetBlue Terminal, at JFK Airport, Jamaica Queens, New York." Friedman Affirmation ¶ 3. The Court also determines that this affirmation sufficiently authenticates the attached lease section.[4]

---

[3] Lara does not argue that Giles provides an insufficient foundation for the admission of the JetBlue maintenance records as business records pursuant to Federal Rule of Evidence 803(6). Because Lara has not moved for summary judgment, and because the Court is not granting JetBlue summary judgment (even fully considering these records), any failure to establish the admissibility of these records under Rule 803(6) does not affect the disposition of Defendants' motion. The Court notes, however, that JetBlue should be sure to establish a proper foundation at trial for admission of any such records.

[4] On February 13, 2023, the Court directed Defendants to file a complete version of the lease. Dkt. 34. Defendants filed the full lease, with an executed signature page, on February 21, 2023. Dkt. 36. That document was itself authenticated by the affidavit of Dean Mancuso, the "Principal Property Representative" of the Port Authority, who affirmed that the document was a "true and complete copy of the executed Port Authority Lease" for "Terminal Five, entered into November 21, 2005" and "in effect on November 16, 2019." *Id.* ¶¶ 1, 3, 6. The Court has reviewed the entire, executed lease to verify the accuracy of "Sections 10-13," which were previously filed

B.      **Lara's Claims**

    1.  **Claims Against JetBlue**

Defendants argue that Lara's claims against JetBlue are governed exclusively by the Montreal Convention.  Dkt. 30 ("Motion") at 5.  Defendants further argue that Lara has failed to present evidence to establish JetBlue's liability for an "accident" under Article 17 of the Montreal Convention, and that therefore Lara cannot recover.  *Id.* at 7 ("There is no evidence of anything unusual in the operation of the jetbridge . . . .  Absent any external/unusual event causing Plaintiff to fall, her claim fails, and Defendants are entitled to summary judgment as a matter of law.").  Lara agrees that the Montreal Convention applies, Opposition at 11, but argues that "[i]t is clear from the record of this case that [Lara's] accident was certainly an unusual and/or unexpected event," *id.* at 13.  Moreover, "courts have consistently held that the . . . Montreal Convention[] preempt[s] state law and provide[s] the sole avenue for damages claims that fall within the scope of the Convention['s] provisions."  *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 246 (2d Cir. 2021).

"Under the Montreal Convention, a 'carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the . . . injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."  *Id.* at 244 (quoting Montreal Convention, ch. III, art. 17 § 1) (alteration in original).  "While 'accident' is not defined in the Montreal Convention, the Supreme Court has interpreted the substantively identical provision of the Warsaw Convention as 'an unexpected or unusual event or happening that is external to the passenger.'"  *Id.* (quoting *Air France v. Saks*, 470 U.S. 392, 405 (1985)); *see* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. *reprinted in note following* 49

---

by Defendants.  Lara received the full lease from Defendants prior to the filing of Defendants' motion for summary judgment.  Dkt. 33-1 at 1, 3.

U.S.C. § 40105 ("Warsaw Convention").  The Second Circuit has determined that "Montreal Convention provisions may be analyzed in accordance with case law arising from substantively similar provisions of its predecessor, the Warsaw Convention."  *Cohen*, 13 F.4th at 245.

The issue before the Court is therefore whether Lara has come forward with evidence that would allow a reasonably jury to find that her fall was the result of an "accident" within the meaning of the Montreal Convention, *i.e.*, "an unexpected or unusual event or happening that is external to the passenger," *Saks*, 470 U.S. at 405.  The evidence before the Court with respect to the circumstances of Lara's fall is sparse.  On the one hand, as recounted in Defendants' Rule 56.1 statement, Lara testified in her deposition that the jet bridge she stepped onto "had an excessive step height."  Defts. 56.1 Stmt. ¶ 3.  Specifically, Lara recalled that she "was trying to get out of the airplane" and that at "the moment [she] step[ed]" she saw "there was a – a gap" and that the gap felt like "it was a little bit more deeper than it's supposed to be, like, you know, like, the gap between the floor and the airplane."  Lara Dep. Tr. at 59:24-60:5.  She further testified that the "height of the step" was "very high."  *Id.* at 60:7-9.

On the other hand, Defendants have produced maintenance records from October 4, 2019, November 18, 2019, and December 13, 2019, which do not reflect that the jet bridge was not properly leveled.  *See* Giles Affidavit, Exh. A; *see also* Giles Affidavit ¶ 5.  While not direct evidence that the jet bridge was functioning as expected on November 6, 2019, the day of the accident, these records are circumstantial evidence that tend to show the proper function of the jet bridge at around that time.

Taking this evidence together, the Court concludes there is a genuine dispute of fact as to whether the jet bridge was functioning in an "unexpected or unusual" way.  Defendants have presented evidence suggesting that the jet bridge was functioning as expected at around the time of the accident, *see* Giles Affidavit, Exh. A, which supports their argument that "[t]here is no evidence

8

of anything unusual in the operation of the jetbridge," Motion at 8.  Lara responds by pointing only to her deposition testimony, which is cited in Defendants' Rule 56.1 statement.[5]

It is true, of course, that in some cases, a "Plaintiff's deposition testimony is simply self-serving testimony that cannot be used to defeat summary judgment."  *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 367 n.5 (S.D.N.Y. 2018) (citing *Fincher v. Depository Tr. & Clearing Corp.*, No. 06 Civ. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008), *aff'd*, 604 F.3d 712 (2d Cir. 2010)); *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 258 n.15 (S.D.N.Y. 2008) ("Plaintiffs' self-serving and unsubstantiated deposition testimony is insufficient to create a triable issue of fact . . . .").  But the Second Circuit has also stated that a "plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact."  *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019).  That court has rejected the sufficiency of stand-alone testimony that is "contradictory and incomplete" and "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." *Jeffreys*, 426 F.3d at 555 (internal quotation marks omitted).  But it has relied on such testimony when it is "consistent and uncomplicated," and not "wholly improbable."  *Bellamy*, 914 F.3d at 746.

While admittedly lacking specificity and rather thin, Lara's testimony that the step from the plane to the jet bridge was "very high," Lara Dep. Tr. at 60:9, is consistent, uncomplicated, and not

---

[5] Lara improperly attaches various materials to her opposition brief, specifically, transcripts from the depositions of Lara and a JetBlue employee and provisions of the Montreal Convention. *See* Dkts. 31-1, 32-2, 32-3.  "[T]he Second Circuit has been clear that a district court 'is not required to consider what the parties fail to point out in their Local Rule 56.1 statements." *McCall v. Genpak, LLC*, No. 13 Civ. 1947 (KMK), 2015 WL 5730352, at *13 (S.D.N.Y. Sept. 30, 2015) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)); *accord Genova v. Cnty. Of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021) (same).  But regardless, the Court has reviewed those materials and nothing contained therein sheds any further light on the events of November 6, 2019 in a manner that is additionally favorable to Lara.

9

improbable. "[V]iewed in the light most favorable" to her, *Bellamy*, 914 F.3d at 747, that testimony sufficiently creates a genuine dispute as to the height of the jet bridge, and particularly as to whether that height was "unexpected or usual," especially given that "where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury," *Saks*, 470 U.S. at 405.

The Court therefore determines that Defendants have failed to show the absence of a genuine issue of material fact as to whether Lara's fall was the result of "an unexpected or unusual event or happening that [was] external to" her. *Id.* For that reason, the Court denies Defendants' motion for summary judgment as to JetBlue.

### 2.   Claims Against the Port Authority

Defendants also argue that the Port Authority should be dismissed from this action because, pursuant to the lease between the Port Authority and JetBlue, "[t]he Port Authority did not control the incident location and cannot be held liable to plaintiff." Motion at 8. Lara responds that a factual question still remains as to the Port Authority's control because "Defendants' motion, affirmation and supporting exhibits fail to discuss the course of conduct as between the Port Authority and JetBlue pertaining to maintenance and/or repair of the jet bridge at issue in this litigation." Opposition at 19.

Under New York Law "an out-of-possession landlord may not be held liable for a third party's injury on his or her premises unless the landlord has notice of the defect and has consented to be responsible for maintenance or repair." *Lopez v. 1372 Shakespeare Ave. Hous. Dev. Fund Corp.*, 750 N.Y.S.2d 44, 46 (App. Div. 2002). New York courts have applied this principle to find the Port Authority not liable for the conditions of the areas it leases to airlines. *See DeLeon v. Port Auth. of N.Y. & N.J.*, 761 N.Y.S.2d 54, 55 (App. Div. 2003); *D'Orlando v. Port Auth. of N.Y. & N.J.*, 674 N.Y.S.2d 382, 382-83 (App. Div. 1998); *Stark v. Port Auth. of N.Y. & N.J.*, 639 N.Y.S.2d

57, 58 (App. Div. 1996); *Santiago v. Port Auth. of N.Y. & N.J.*, 611 N.Y.S.2d 174, 174-75 (App. Div. 1994).

Here, Defendants have presented to the Court a lease pursuant to which JetBlue "shall relieve the Port Authority from all responsibility for all repair, rebuilding and maintenance whatsoever in the Premises, whether such repair, rebuilding or maintenance be ordinary or extraordinary, partial or entire, inside or outside, foreseen or unforeseen, structural or otherwise." Lease at 116.[6] That lease lays out the responsibilities of JetBlue in maintaining and repairing Terminal Five at JFK Airport, the terminal where Lara's alleged injury occurred. *See id.* at 116-18; *see also* Friedman Affirmation ¶ 3; Dkt. 1-1 ¶¶ 10, 18.

Lara has not responded to the express terms of the lease by coming forward with any evidence reflecting that the Port Authority consented to be responsible for the maintenance and repair of the location where Lara allegedly fell. Thus, there is no genuine dispute of material fact as to this issue: all of the evidence before the Court indicates that the Port Authority did not consent to be responsible for maintenance and repair of the jet bridge or Terminal Five. As an out-of-possession landlord, the Port Authority is therefore entitled to judgment as a matter of law, and the Court grants Defendants' motion for summary judgment with respect to Lara's claims against the Port Authority.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to her claim against the Port Authority and denied with respect to her claim against JetBlue, which only arises under the Montreal Convention.

Lara and JetBlue are directed to appear for a status conference on March 3, 2023, at 9:30

---

[6] The Court's citations are to the page numbers in the excerpt of the lease that is attached as Exhibit A to Friedman's affirmation.

a.m., to discuss a trial date.  The conference will take place in Courtroom 12D of the Daniel Patrick

Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket

Number 26.

SO ORDERED.

Dated: February 23, 2023
      New York, New York

                                         JOHN P. CRONAN
                               United States District Judge